UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **LLOYD JAY ROSS** | **CIVIL ACTION NO. 23-0309** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **MADISON PARISH CORRECTIONAL FACILITY, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Plaintiff Lloyd Jay Ross, a prisoner at Terrebonne Parish Criminal Justice Complex proceeding pro se and in forma pauperis, filed this proceeding on approximately February 1, 2023, under 42 U.S.C. § 1983. He names the following defendants: Madison Parish Correctional Facility ("MPCF"), Warden, and Staff.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

**Background**

Plaintiff was transferred from Terrebonne Parish to MPCF because of Hurricane Ida. [doc. # 1, p. 4]. He claims that in August 2021, when he arrived at MPCF, the warden hit him in the mouth with a flashlight two or three times for no reason. [doc. #s 1, p. 4; 8, p. 1; 12, p. 3; 18, p. 1]. Plaintiff attempted to rise, but the warden wrestled him to the ground and "kept hitting [him] in the head with the flashlight[,]" injuring Plaintiff's lip, eye, and head. [doc. # 18, p. 1]. Guards entered and pulled the warden off him. *Id.* Plaintiff was "crying and screaming, 'look how I'm bleeding.'" *Id.* Then, while Plaintiff was handcuffed, guards slammed on the ground,

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

kneed him, sprayed him with pepper spray, and stomped on his head. [doc. #s 12, p. 3; 18, p. 1].

Plaintiff claims that "they brought [him] to a lockdown building, separate from everybody, where they refused [him] food for that day." [doc. # 18, p. 1]. Plaintiff remained in lockdown for one week. *Id.*

Plaintiff claims that in September 2021, "they put [him] in this lockdown cell with no mattress . . . or blanket for about a week . . . ." [doc. # 18, p. 1]. He had to share a mattress with another inmate. *Id.* Plaintiff writes: "we would have consetals[2] [sic] sex on camera and they wouldn't do" anything. *Id.*

In October 2021, while Plaintiff was sleeping in "an inmate's bed[,]" the inmate climbed in the bed and started having sex with him. [doc. # 18, p. 2]. Plaintiff awoke, jumped out of bed, and told a guard, Big Davis, what happened. *Id.* Plaintiff claims that "they refuse[d] to do a rape kit[.]" *Id.*

Plaintiff claims that "they . . . placed [him] on suicide watch for 4 or 5 months with" only a paper gown to wear. [doc. # 18, p. 2]. He lacked sheets or a blanket. [doc. # 9, p. 1]. He also claims that he was "refused hygiene breaks." [doc. # 1, p. 4]. He adds that "they" would sometimes forget to bring him food. [doc. # 9, p. 1]. He suggests that he had to "beat on the door" to obtain food, but when he did, "they would refuse to let [him] shower." [doc. # 9, p. 1].

Plaintiff claims that guards told other inmates to rape him and to have consensual sex with him. [doc. #s 1, p. 4; 8, p. 1; 9, p. 1; 12, p. 3]. He claims that "the[y] would [] also put other inmates in [his] cell where the[y] would fight" him and rape him. [doc. # 18, p. 2]. Inmates threatened to beat and kill him if he did not have sex with them. [doc. # 9, p. 1].

---

[2] Plaintiff appears to state that he had 'consensual' sex with the other inmate. Plaintiff also appears to spell consensual, 'consital.' [doc. # 9].

Plaintiff seeks protective custody and $100,000,000.00 for pain and suffering. [doc. #s 1, p. 5; 12, p. 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Statute of Limitations**

To recapitulate, Plaintiff claims that in August 2021, the warden hit him in the mouth with a flashlight two or three times for no reason. Plaintiff attempted to rise, but the warden wrestled him to the ground and "kept hitting [him] in the head with the flashlight[,]" injuring his lip, eye, and head. Then, while Plaintiff was handcuffed, guards slammed on the ground, kneed him, sprayed him with pepper spray, and stomped on his head. Plaintiff claims that "they brought [him] to a lockdown building, separate from everybody, where they refused [him] food for that day." He remained in lockdown for one week.

Plaintiff claims that in September 2021, "they put [him] in this lockdown cell with no mattress . . . or blanket for about a week . . . ." He had to share a mattress with another inmate. Plaintiff writes: "we would have consetals [sic] sex on camera and they wouldn't do" anything.

In October 2021, while Plaintiff was sleeping in "an inmate's bed[,]" the inmate climbed in the bed and started having sex with him. Plaintiff awoke, jumped out of bed, and told a guard what happened. Plaintiff claims that "they refuse[d] to do a rape kit[.]"

District courts are authorized to dismiss claims as frivolous if "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981

F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period sua sponte. *See Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999).

The statute of limitations for Section 1983 actions is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1984). Thus, Louisiana's one-year personal injury statute of limitations, under LA. CIV. CODE art 3492, applies here. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980).

However, the date of accrual for a Section 1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986). "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516 (*quoting Vigman v. Community National Bank and Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981)). In other words, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Brockman*, 397 F. App'x at 22.

Here, Plaintiff's claims—that the warden and guards utilized excessive force in August 2021—accrued in August 2021. Plainly, Plaintiff knew or had reason to know of the violations the day they occurred.[4] Plaintiff had one year from that date, or until August 2022, to file his

---

[4] *See Morrill v. City of Denton, Texas*, 693 F. App'x 304, 307 (5th Cir. 2017) (holding that the constitutional injury was complete on the day the alleged excessive force took place); *Armstrong v. Serpas*, 670 F. App'x 851, 852 (5th Cir. 2016).

6

claims. As Plaintiff did not file this proceeding until, at the earliest, February 1, 2023,[5] the statute of limitations bars the claims.[6]

Plaintiff's next claims—that in August 2021, "they brought [him] to a lockdown building, separate from everybody, where they refused [him] food for that day" and where he remained for one week—accrued at the latest when he was released from lockdown.[7] Even assuming these claims accrued at the latest in September 2021, he would have had until September 2022, to file the claims. As Plaintiff did not file this proceeding until, at the earliest, February 1, 2023, the statute of limitations bars the claims.

Plaintiff's next claims—that in September 2021, (i) "they" placed him in lockdown for one week without a mattress or blanket and (ii) "they" did not prevent his consensual sex with another inmate—accrued, respectively, when he was released from lockdown and when "they" allegedly failed to protect him. Even assuming these claims accrued at the latest in October 2021, he would have had until October 2022, to file his claims. As Plaintiff did not file this

---

[5] Plaintiff signed his initial pleading on February 1, 2023. [doc. # 1, p. 5].

[6] The limitations period is subject to state tolling and equitable tolling in certain circumstances, but Plaintiff does not argue that his claims were tolled. If Plaintiff contends that his claims were tolled for any reason, he may present his contention in an objection to this Report and Recommendation.

[7] "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). "But these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* Here, when Plaintiff entered administrative segregation, he may not have known whether the restraint he experienced was atypical and significant until the latter dates of his segregation. *See generally Arauz v. Bell*, 307 F. App'x 923, 928 (6th Cir. 2009) (declining to find that the date of accrual began when the plaintiff entered administrative segregation and reasoning that the plaintiff could not, when he first entered segregation, have known how restrictive the conditions would be or how long he would be there); *see also Street v. Vose*, 936 F.2d 38, 40 (1st Cir. 1991) (finding that a claim of detention in segregation accrued when the detention completed).

proceeding until, at the earliest, February 1, 2023, the statute of limitations bars the claims.

Finally, Plaintiff's claim that—in October 2021, "they refuse[d] to do a rape kit"—accrued in October 2021. Even assuming this claim accrued at the end of October 2021, Plaintiff would have had until October 2022, to file the claim. As Plaintiff did not file this proceeding until, at the earliest, February 1, 2023, the statute of limitations bars the claim.

The Court should dismiss these claims as untimely.

**3. Conditions of Confinement**

Plaintiff claims that "they . . . placed [him] on suicide watch for 4 or 5 months with" only a paper gown to wear. [doc. # 18, p. 2]. He lacked sheets and a blanket. [doc. # 9, p. 1]. He also claims that he was "refused hygiene breaks." [doc. # 1, p. 4]. He adds that "they" would sometimes forget to bring him food. [doc. # 9, p. 1]. He suggests that he had to "beat on the door" to obtain food, but when he did, "they would refuse to let [him] shower." [doc. # 9, p. 1].

A. Identifying a Responsible Defendant

To the extent Plaintiff seeks relief from "guards" or "staff" as singular entities, he fails to name a defendant amenable to suit. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. "Staff" and "guards" do not qualify as juridical persons.[8] Accordingly, the Court should dismiss Plaintiff's claims against these ostensible defendants.

If by "staff" or "guards" Plaintiff refers not to singular entities but to individuals other

---

[8] *See Henderson v. Mid States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . .").

8

than those he identified in his pleadings, he does not identify these persons and does not address how these unidentified persons were personally involved in depriving him of a constitutional right.

As above, a complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Further, Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Here, the undersigned instructed Plaintiff to "provide the name of each person—instead of naming groups of persons like staff or guards—who allegedly violated his constitutional rights and from whom he seeks relief." [doc. # 17, p. 2]. The undersigned also notified Plaintiff that "staff" is not a proper defendant. *Id.* Plaintiff filed an amended pleading, but he did not identify who "they," "staff," or "guards" are. Moreover, Plaintiff does not sufficiently identify "any particular defendant's personal involvement in conduct that caused constitutional deprivation." *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (dismissing a claim that supervisory officials failed to correctly house the plaintiff because despite the

9

magistrate judge's instruction to "state what each defendant did[,]" the plaintiff did not identify a responsible defendant). The Court disregards bare assertions of collective responsibility unsupported by concrete factual allegations. *See Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021); *Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm.").

Plaintiff mentions that he does not know the names of the guards who utilized excessive force because the uses of force occurred the first day he arrived at the facility. [doc. # 18, p. 1]. He does not, however, state that he lacked the identities of the individuals who, months after he arrived at the facility, were responsible for confining him in the conditions described above. In addition, he specifically faults a group he refers to as "they" for his conditions of confinement claims, but he does not specify that "they" were the same as the "guards" who allegedly used excessive force.

Here, to the extent Plaintiff names "staff" or "guards" as unidentified persons, the Court should dismiss Plaintiff's claims against them.

B. <u>Failure to State a Claim</u>

Even assuming Plaintiff did identify a responsible defendant, he does not state a plausible claim on which relief may be granted.

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238

F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's necessities." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to the "evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted). *See Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) ("Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement."). However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

11

Here, Plaintiff claims that for four or five months, he had only a paper gown to wear, and he lacked sheets and a blanket. Plaintiff, however, does not allege that he endured an extreme deprivation of any minimal civilized measure of life's necessities. He does not, for instance, allege that he endured a sufficiently serious deprivation of warmth or sleep. *See generally Young v. McCain*, 760 F. App'x 251, 257 (5th Cir. 2019) (finding no claim where the plaintiff alleged that he was assigned to a "'strip cell/isolation,' that he was deprived of a mattress, sheets, and blankets for 60 days, and that in the fall and winter of 2015 he was given only 'a very very light fabric material,' two undershirts, and two pairs of socks, and was not provided with a mattress and bedding between 5:30 a.m. and 8:30 p.m. each day."); *McMahon v. Beard*, 583 F.2d 172, 175 (5th Cir.1978) (finding no constitutional violation where a detainee, who attempted suicide, was placed naked in a cell, without a mattress, sheets, or blankets, for a period of approximately 90 days).

Plaintiff also claims that he was "refused hygiene breaks," that "they" would sometimes forget to bring him food, and that "they would refuse to let [him] shower." However, he at best presents deprivations of hygiene and food for unspecified durations and in unspecified amounts. Like above, Plaintiff does not identify an extreme deprivation of a human need.[9, 10]

---

[9] *See generally Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) (finding the denial of showers for a three-day period de minimis); *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982) (citing with tacit approval several courts' opinions that "one or two showers a week is sufficient to satisfy constitutional requirements."); *Brumley v. Livingston*, 459 F. App'x 470, 472 (5th Cir. 2012) (affirming dismissal of a plaintiff's claim that he was denied showers "because he failed to properly allege that he was subjected to a substantial risk of harm."); *c.f. Bradley*, 157 F.3d at 1025 (finding that a plaintiff stated a claim when he alleged that he was unable to bathe for several months, that he was forced to clean himself with toilet water, and that the unhygienic conditions resulted in a fungal infection requiring medical attention).

[10] *See Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (denying a claim of inadequate food because the plaintiff did not allege "any specific physical harm," did not allege "that he lost

The Court should dismiss Plaintiff's conditions of confinement claims.

**4. Failure to Protect**

Plaintiff claims that guards told other inmates to rape him and to have consensual sex with him. [doc. #s 1, p. 4; 8, p. 1; 9, p. 1; 12, p. 3]. He claims that "the[y] would [] also put other inmates in [his] cell where the[y] would fight" him and rape him. [doc. # 18, p. 2]. Inmates threatened to beat and kill him if he did not have sex with them. [doc. # 9, p. 1].

As explained above, however, "guards" is not an entity amenable to suit. And Plaintiff does not identify any other responsible defendant.

Moreover, Plaintiff does not name a John or Jane Doe, specify how many guards were involved, describe any actor/potential defendant, or otherwise describe any guard's specific actions/inaction.

Further, even assuming Plaintiff identified a responsible defendant, he does not state a plausible claim on which relief may be granted. To state a failure-to-protect claim, Plaintiff must allege that a defendant's inaction amounted to deliberate indifference. That is, he must allege that a defendant "knew of and disregarded a substantial risk of serious harm." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017).

"To plead a conspiracy under Section 1983, a plaintiff must allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights." *Shine v. Jones*, 743 F. App'x 566, 568 (5th Cir. 2018). "Charges as to such conspiracies must be based on substantial and affirmative

---

weight or suffered other adverse physical effects or was denied a nutritionally and calorically adequate diet," and did not allege "having his health put at risk.").

allegations, and no mere gossamer web of conclusion or inference . . . trifles light as air . . . will suffice[.]" *Crummer Co. v. Du Pont*, 223 F.2d 238, 245 (5th Cir. 1955).

In *Mosley v. Anderson*, 503 F. App'x 272, 274 (5th Cir. 2012), the court opined that a plaintiff "proffered no specific factual allegations that establish that the defendants knew of and disregarded a risk to his safety by orchestrating his removal from segregation and his placement in a cell where he could be exposed to an anticipated attack by [another inmate], i.e., he has not alleged any particular facts establishing that the defendants knew that [the inmate] presented a risk of serious harm and purposefully exposed Mosley to that risk." The court went on, "In effect, Mosley has proffered only his speculation that his attack was the deliberate consequence of a conspiracy involving prison officials' collaboration with an expected assailant; his speculative assertions do not sufficiently demonstrate that the defendants had adequate information to draw an inference that Mosley faced a substantial risk of attack from [the inmate] or that they ignored or exposed Mosley to that risk.") (internal citation omitted).

Here, like in *Mosley*, Plaintiff offers only vague and conclusory allegations that guards told other inmates to rape him and to have consensual sex with him. He offers no additional details, despite the undersigned instructions to: "(i) explain whether the defendant(s) caused the inmates to rape him; (ii) explain what the defendant knew about the inmates intending to rape him and when the defendant knew this information; and (iii) explain how a defendant disregarded a substantial risk of serious harm." [doc. # 17].

To the extent he pleads conspiracy, he also fails to allege that any defendant entered into any agreement with other defendants or inmates.[11]

---

[11] "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *See Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019).

In conclusion, Plaintiff does not provide enough information to state a plausible failure-to-protect or conspiracy claim. Accordingly, the Court should dismiss these claims.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Lloyd Jay Ross's claims be **DISMISSED** as untimely, frivolous, and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 6th day of September, 2023.

Kayla Dye McClusky
United States Magistrate Judge